# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

| | |
|---|---|
| COMCAST OF MAINE/NEW HAMPSHIRE, INC.; A&E TELEVISION NETWORKS, LLC; C-SPAN; CBS CORP.; DISCOVERY, INC.; DISNEY ENTERPRISES, INC.; FOX CABLE NETWORK SERVICES, LLC; NBCUNIVERSAL MEDIA, LLC; NEW ENGLAND SPORTS NETWORK, LP; and VIACOM INC., <br><br> Plaintiffs, <br><br> v. <br><br> JANET MILLS, in her official capacity as the Governor of Maine; AARON FREY, in his official capacity as the Attorney General of Maine; the CITY OF BATH, MAINE; the TOWN OF BERWICK, MAINE; the TOWN OF BOWDOIN, MAINE; the TOWN OF BOWDOINHAM, MAINE; the TOWN OF BRUNSWICK, MAINE; the TOWN OF DURHAM, MAINE; the TOWN OF ELIOT, MAINE; the TOWN OF FREEPORT, MAINE; the TOWN OF HARPSWELL, MAINE; the TOWN OF KITTERY, MAINE; the TOWN OF PHIPPSBURG, MAINE; the TOWN OF SOUTH BERWICK, MAINE; the TOWN OF TOPSHAM, MAINE; the TOWN OF WEST BATH, MAINE; and the TOWN OF WOOLWICH, MAINE; <br><br> Defendants. | Case No. 1:19-cv-00410-NT |

## BRIEF OF NATIONAL ASSOCIATION OF BROADCASTERS AND MAINE ASSOCIATION OF BROADCASTERS AS *AMICI CURIAE* SUPPORTING PLAINTIFFS

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Local Rule 7.1, amici curiae make the following disclosures regarding their corporate status:

Both the National Association of Broadcasters and the Maine Association of Broadcasters are nonprofit, nonpartisan corporations organized under Section 501(c)(6) of the Internal Revenue Code.  Neither has a parent corporation nor issues stock, and no publicly held corporation has any form of ownership interest in either corporation.

Dated: September 17, 2019                            Respectfully submitted,

                                                     /s/ Timothy C. Woodcock

Rick Kaplan (*pro hac vice pending*)                 Timothy C. Woodcock
Erin Dozier (*pro hac vice pending*)                 EATON PEABODY
NATIONAL ASSOCIATION OF BROADCASTERS                 80 Exchange Street
1771 N Street, NW                                    Bangor, Maine 04401
Washington, DC  20036                                twoodcock@eatonpeabody.com
rkaplan@nab.org                                      207-992-4338
EDozier@nab.org
202-429-5430

Stephen B. Kinnaird (*pro hac vice pending*)
PAUL HASTINGS LLP
875 15th Street, NW
Washington, DC  20005
stephenkinnaird@paulhastings.com
(202) 551-1700                                       *Counsel for* Amici Curiae *National Association of Broadcasters and Maine Association of Broadcasters*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................................. 1

INTERESTS OF *AMICI CURIAE* ................................................................................................. 1

ARGUMENT .................................................................................................................................... 2

I.    FEDERAL LAW PREEMPTS STATE LAW IN THE REALM OF CABLE SERVICE ............................................................................................................................ 2

II.   STATE LAW DOES NOT AND CANNOT REQUIRE A LA CARTE PROVISION OF BASIC SERVICE TIER CHANNELS IN DEFIANCE OF FEDERAL LAW. ................................................................................................................ 4

III.   CONCLUSION ................................................................................................................... 9

LEGAL_US_E # 144184698.6

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arizona v. United States*,
    567 U.S. 387 (2012)...................................................................................................2, 3

*Capital Cities Cable, Inc. v. Crisp*,
    467 U.S. 691 (1984).......................................................................................................3

*Fleet Nat'l Bank v. Liberty*,
    845 A.2d 1183 (Me. 2004)............................................................................................6

*Liberty Cablevision Of Puerto Rico, Inc. v. Municipality Of Caguas*,
    417 F.3d 216 (1st Cir. 2005).........................................................................................3

*State v. Taplin*,
    247 A.2d 919 (Me. 1968)..............................................................................................6

*Turner Broad. Sys., Inc. v. FCC*,
    520 U.S. 180 (1997)...................................................................................................7, 8

**Statutes**

129 Pub. L. Ch. 245, § 3 (2019) (codified at 30-A MRSA §3008, sub-§5, ¶D-1) ......................5, 6

129 Pub. L. Ch. 308, § 1 (2019) (codified at 30-A M.R.S. § 3008(3)(F))................................2, 5

47 U.S.C. § 325(b) .........................................................................................................................4

47 U.S.C. § 521..........................................................................................................................6, 7

47 U.S.C. § 522(4) .........................................................................................................................5

47 U.S.C. § 522(16)(A) ..................................................................................................................5

47 U.S.C. § 531(a) .....................................................................................................................5, 8

47 U.S.C. § 534..............................................................................................................................4

47 U.S.C. § 534(b)(4) ....................................................................................................................5

47 U.S.C. § 534(b)(6) ....................................................................................................................5

47 U.S.C. § 535..............................................................................................................................4

47 U.S.C. § 543(b)(7)(A) ....................................................................................................1, 2, 4, 8

## TABLE OF AUTHORITIES
(continued)

**Page**

47 U.S.C. § 543(b)(7)(A)(i)-(iii) ........................................................................................2, 4

47 U.S.C. § 544(f)(1) ..............................................................................................................3

47 U.S.C. § 556(c) .................................................................................................................3

Cable Television Consumer Protection and Competition Act of 1992, Pub. L. No.
    102-385, 106 Stat. 1460 (1992) ................................................................................6, 7, 8

Communications Act § 611 ..................................................................................................8

Communications Act § 614 ..................................................................................................4

Communications Act § 615 ..................................................................................................4

Communications Act § 623 ...............................................................................................4, 9

Communications Act § 623(b)(7)(A) ...................................................................................4

Communications Act § 624(f) ..........................................................................................2, 3

U.S. Const. amend. I ....................................................................................................3, 6, 7

U.S. Const. Art. VI, cl. 2 .......................................................................................................2

**Other Authorities**

*Carriage of Digital Television Broadcast Signals: Amendment to Part 76 of the
    Commission's Rules*, Fifth Report and Order, 27 FCC Rcd. 6529 (2012) ................4

FCC, Communications Marketplace Report, 33 FCC Rcd 12558 (2018) .......................7

FCC, Media Bureau, *Report on the Packaging and Sale of Video Programming
    Services to the Public* (2004) .........................................................................................3

FCC, Media Bureau, *Further Report on the Packaging and Sale of Video
    Programming Services to the Public* (2007) .................................................................3

FCC, Third Report and Order, *In The Matter Of Implementation Of Section
    621(a)(1) Of The Cable Communications Policy Act Of 1984 As Amended By
    The Cable Television Consumer Protection And Competition Act Of 1992*,
    FCC 19-80 (Aug. 2, 2019) ..............................................................................................8

https://www.fcc.gov/general/disaster-support-broadcasters .........................................7

LEGAL_US_E # 144184698.6

# TABLE OF AUTHORITIES
(continued)

**Page**

Remarks of FCC Chairman Ajit Pai, "Eye of the Storm: Broadcasters' Role in
    Emergencies," 2018 FCC LEXIS 175 (Jan. 18, 2018) ..............................................................7

LEGAL_US_E # 144184698.6

## INTRODUCTION

The State of Maine passed a law in June 2019 that will obligate cable operators to offer cable channels and programs to subscribers on an a la carte basis. That statutory requirement is clearly pre-empted by federal law forbidding states to regulate the provision and content of cable services except as authorized under the Communications Act of 1934 ("Act"), and that alone warrants granting preliminary and ultimately permanent injunctive relief to Plaintiffs. Furthermore, if the state law is deemed to apply to *broadcast* channels and programs carried on cable systems—which it should not be—it likewise is preempted by another federal statute that requires cable operators to place broadcast and public, educational, and government ("PEG") access channels on a basic service tier that all cable subscribers must purchase.

## INTERESTS OF *AMICI CURIAE*

*Amicus curiae* National Association of Broadcasters ("NAB") is a non-profit incorporated trade association representing radio and television broadcasters across the United States. NAB advocates for its membership before Congress, the courts, the Federal Communications Commission ("FCC"), and other governmental entities. Many NAB members are local, independent stations.

*Amicus curiae* Maine Association of Broadcasters ("MAB") represents over 125 radio and television broadcast stations in Maine. MAB's purpose is to promote broadcasting in Maine by providing information and advice to its members. It has represented its members' interests before Congress, the Maine Legislature, the FCC, and state agencies.

Members of both NAB and MAB include local television broadcast stations whose signals are carried by cable systems in Maine. Under federal law, "[e]ach cable operator of a cable system shall provide its subscribers a separately available basic service tier to which subscription is required for access to any other tier of service." 47 U.S.C. § 543(b)(7)(A). That

mandatory basic service tier must include any local television broadcast channels carried on the cable system. *Id.* § 543(b)(7)(A)(i), (iii).

This case concerns H.P. 606—L.D. 832, entitled "An Act to Expand Options for Consumers of Cable Television in Purchasing Individual Channels and Programs" ("L.D. 832"), 129 Pub. L. Ch. 308, § 1 (2019). L.D. 832 provides that "[n]otwithstanding any provision in a franchise, a cable system operator shall offer subscribers the option of purchasing access to cable channels, or programs on cable channels, individually." 129 Pub. L. Ch. 308, § 1 (2019) (emphasis added) (to be codified at 30-A M.R.S. § 3008(3)(F)). If the statutory terms "cable channels" and "programs on cable channels" are deemed to include "broadcast channels" and "broadcast programs" also carried on cable systems, and no preemption is found, NAB and MAB members in Maine would be adversely affected. They would potentially lose viewership and revenue if their signals are no longer delivered as part of federally mandated provision of a "basic service tier" of programming, and the provisions of their negotiated retransmission agreements with cable operators that forbid "a la carte" offering of broadcast channels and programs to cable subscribers would be at risk.

## ARGUMENT

### I. FEDERAL LAW PREEMPTS STATE LAW IN THE REALM OF CABLE SERVICE

The Supremacy Clause of the U.S. Constitution, Art. VI, cl. 2, leaves "no doubt that Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision." *Arizona v. United States*, 567 U.S. 387, 399 (2012). Cable television service is subject to such express federal preemption. Section 624(f) of the Communications Act declares that "State[s] . . . may not impose requirements regarding the provision or content of cable services, except as expressly provided in" Title VI of that Act. 47

2

U.S.C. § 544(f)(1); *see also* 47 U.S.C. § 556(c) ("[A]ny provision of law of any State, political subdivision, or agency thereof, or franchising authority, or any provision of any franchise granted by such authority, which is inconsistent with this chapter shall be deemed to be preempted and superseded."). Nothing in Title VI of the Act "expressly provide[s]" for a State's ability to mandate the offering of cable services a la carte—indeed, as shown in Section II, a complete ban on service bundling would run afoul of the federal requirement that cable operators deliver a "basic service tier" of programming.

The Supreme Court, in support of the FCC's broad preemptive authority, long ago made it clear that States generally may only "regulate such local aspects of cable systems as franchisee selection and construction oversight"; interference with what cable operators may offer to consumers "clearly exceed[s] that limited jurisdiction and interfere[s] with a regulatory area that the Commission has explicitly preempted." *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 704–705 (1984); *see also Liberty Cablevision Of Puerto Rico, Inc. v. Municipality Of Caguas*, 417 F.3d 216, 221 (1st Cir. 2005) (citing "the clear congressional intent to preempt" inconsistent State regulation of cable television). Mandatory bundling and tiering of channels are thus clearly within the federal preempted realm of the Cable Act. Section 624(f) alone disposes of this case.

The FCC has debated the merits of different forms of a la carte programming, *see* FCC, Media Bureau, *Report on the Packaging and Sale of Video Programming Services to the Public* (2004) ("2004 FCC Report"); FCC, Media Bureau, *Further Report on the Packaging and Sale of Video Programming Services to the Public* (2007), but the extraordinary breadth of L.D. 832, extending even down to the program level, without consideration of economic cost, technical feasibility, or First Amendment implications, has no basis in sound policy. At a minimum, cable

operators cannot be subject to potentially 50 different rules, which is why Congress forbade state regulation of the provision and content of cable services.

## II. STATE LAW DOES NOT AND CANNOT REQUIRE A LA CARTE PROVISION OF BASIC SERVICE TIER CHANNELS IN DEFIANCE OF FEDERAL LAW.

Section 623 of the Communications Act (Act) requires that "[e]ach cable operator of a cable system *shall provide* its subscribers a separately available basic service tier *to which subscription is required for access to any other tier of service*." 47 U.S.C. § 543(b)(7)(A) (emphasis added). The Act defines three mandatory "minimum" components of the basic service tier. They are (1) the signals of local television broadcast stations, both commercial and noncommercial, which the cable operator must carry pursuant to sections 614 and 615 of the Act (47 U.S.C. §§ 534, 535); (2) any PEG channels "required by the franchise of the cable system to be provided to subscribers"; and (3) because commercial television broadcasters can negotiate retransmission agreements outside of the "must carry" provisions, *see* 47 U.S.C. § 325(b), "[a]ny signal of any television broadcast station that is provided by the cable operator to any subscriber, except a signal which is secondarily transmitted by a satellite carrier beyond the local service area of such station." 47 U.S.C. § 543(b)(7)(A)(i)-(iii). Although some parts of section 623 of the Act authorizing regulation of cable operators depend on whether the operator faces effective competition in the franchise area, the basic-tier requirements of section 623(b)(7)(A) continue in full force regardless of the presence of such competition. *See Carriage of Digital Television Broadcast Signals: Amendment to Part 76 of the Commission's Rules*, Fifth Report and Order, 27 FCC Rcd. 6529 ¶ 9 (2012). As the FCC explained in a 2004 report to Congress, "[a] cable operator generally cannot offer all local broadcast stations on an a la carte basis because the Act requires that broadcast stations be sold together on the basic service tier and provided to every subscriber of the cable system." 2004 FCC Report at 122. Accordingly, as Plaintiffs properly

4

argue, federal law prohibits a cable operator from offering any of the components of the basic tier, including broadcast television channels, on an a la carte basis, and so any state law that mandates such an a la carte offering of the basic-tier channels would unquestionably be preempted. Dkt. 14 at 9-11.

Thus, in addition to the other well-reasoned preemption arguments presented by the Plaintiffs, L.D. 832 is clearly preempted by federal law insofar as it implicates the basic tier. But L.D. 832 need not be construed to require cable operators to offer the basic-service-tier channels a la carte. L.D. 832 provides that "a cable system operator shall offer subscribers the option of purchasing access to *cable channels*, or *programs on cable channels*, individually." 129 Pub. L. Ch. 308, § 1 (2019) (emphasis added). The term "cable channels" is not defined in L.D. 832, and there are two reasonable constructions: it could mean (1) all channels on the cable system, or (2) all channels that carry cable programming, which would exclude the mandatory basic-service-tier channels. To be sure, the channel capacity of cable systems must be allocated to carry broadcast signals or PEG channels on the basic service tier, *see* 47 U.S.C. §§ 522(4) & 16(A), 531(a), 534(b)(4) & (6), but L.D. 832 is not concerned with the allocation of cable bandwidth. Rather, the purpose of L.D. 832 is to remove the cable operator's ability to bundle cable channels or programs, and to charge bundled rather than individual prices for cable channels and programs. L.D. 832 properly applies only to channels that carry cable programming, and excludes the basic service tier.

If there were any doubt, S.P. 426—L.D. 1371 (enacted eight days before L.D. 832 on June 7, 2019 and not repealed) should lay it to rest. L.D. 1371 is a "provision for the use and support of public, educational and governmental access channels, *which must be carried in the same manner and numerical location sequence as are the local broadcast channels* originating

5

from the State and carried on the cable television system pursuant to section 3010, subsection 5-A." 129 Pub. L. Ch. 245, § 3 (2019) (emphasis added) (to be codified at 30-A MRSA §3008, sub-§5, ¶D-1).  It requires that "[a] cable system operator *shall carry* public, educational and governmental access channels *on the cable system operator's basic cable or video service offerings or tiers*, and that "[a] cable system operator may not separate public, educational and governmental access channels numerically from *other local broadcast channels carried on the cable system operator's basic cable or video service offerings or tiers . . . .*" *Id.* § 6 (emphasis added) (to be codified at 30-A MRSA §3010, sub-§§5-A, 5-B and 5-C).  Thus, Maine law does not require a cable operator to disaggregate and offer separately the components of the basic service tier; to the contrary, it expressly mandates that PEG channels and local broadcast channels be carried together on the basic service tier.  Given the presumption against implied repeals and the duty of courts to harmonize statutes when possible, *see State v. Taplin,* 247 A.2d 919, 922 (Me. 1968); *Fleet Nat'l Bank v. Liberty*, 845 A.2d 1183, 1185 (Me. 2004), this Court should interpret L.D. 832 to apply only to channels that carry cable programming, and not to PEG and television broadcast signals that must be carried on the basic service tier.

Nothing in L.D. 832 suggests a purpose to attack the basic service tier.  In passing the Cable Television Consumer Protection and Competition Act of 1992 ("Cable Act"), Pub. L. No. 102-385, 106 Stat. 1460 (1992), Congress recognized the strong governmental and First Amendment interests in ensuring "a fair, efficient, and equitable distribution" of local television broadcasting, which fosters "local origination of programming" and serves as "an important source of local news and public affairs programming and other local broadcast services critical to

an informed electorate." Cable Act § 2(a) (9)-(11), 47 U.S.C. § 521 nt.[1]  *See also Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 189 (1997) (noting that the Cable Act serves "three interrelated interests: (1) preserving the benefits of free, over-the-air local broadcast television, (2) promoting the widespread dissemination of information from a multiplicity of sources, and (3) promoting fair competition in the market for television programming") (internal quotation marks omitted). Commercial and noncommercial broadcast television stations continue to perform their important roles today,[2] and cable distribution enables wider distribution to the public.[3] Furthermore, broadcasters are imbued with duties to serve the public interest, and (among other things) serve as "first informers" communicating with the public about safety issues, including severe weather events.[4]

---

[1] Congress also specifically found a substantial governmental and First Amendment interest in ensuring that cable subscribers have access to local noncommercial and educational stations and that the distribution of unique noncommercial, educational programming services advances that interest.  Cable Act § 2(a)(7); 47 U.S.C. § 521 nt.

[2] *See* FCC, Communications Marketplace Report, 33 FCC Rcd 12558, 12617 (2018) ("Many broadcast television stations differentiate themselves from both other stations and cable channels by offering local news, exclusive news stories, investigative reporting, regional and local sports, and coverage of community events.  In 2017, the average television station aired 5.6 hours of local news per weekday . . . . Although local news is becoming more available from other sources, local broadcast television stations remain the most viewed source and the most preferred source for emergency news.") (footnotes omitted).

[3] *Id.* at 12618 ("As of April 2018, 79% of all TV households received broadcast programming via [a Multichannel Video Programming Distributor, like a cable system].").

[4] *See* Remarks of FCC Chairman Ajit Pai, "Eye of the Storm: Broadcasters' Role in Emergencies," 2018 FCC LEXIS 175 (Jan. 18, 2018) ("In recent weeks, we've seen broadcasters play a critical role in helping keep the American people safe.  Broadcasters warned Californians to evacuate areas threatened by deadly wildfires and mudslides.  And on the East Coast, New Englanders relied heavily on their local broadcasters to help get through the 'bomb cyclone' winter storm that brought record snowfalls, ice, and hurricane-like wind speeds to some of the hardest-hit areas.  But this is nothing new.  Broadcasting and public safety have been lifelong companions."); *see also* https://www.fcc.gov/general/disaster-support-broadcasters ("When a disaster occurs, citizens depend upon local broadcasters for access to lifesaving public safety and emergency announcements.  The FCC recognizes the important role of local broadcasters in

7

Congress was concerned in the 1992 Cable Act that market shifts gave "cable systems the incentive and ability to delete, reposition, or decline carriage to local broadcasters in an attempt to favor affiliated cable programmers," and that "'the economic viability of free local broadcast television and its ability to originate quality local programming will be seriously jeopardized.'" *Turner Broad.*, 520 U.S. at 191 (quoting Cable Act § 2(a)(16)).  Local broadcasting is so essential to the public that Congress mandated that the cable operator provide it to every subscriber.  Accordingly, Congress required inclusion of commercial and noncommercial broadcast television signals on the basic service tier, which must be purchased by each subscriber.  *See* 47 U.S.C. § 543(b)(7)(A).  Nothing in L.D. 832 questions or defies that congressional judgment.

The same is true of PEG channels.  Section 611 of the Communications Act authorizes a franchising authority to "establish requirements in a franchise with respect to the designation or use of channel capacity for public, educational, or governmental use" as prescribed in that section, and bars editorial control by the cable operator over PEG channels except to prevent transmission of obscenity.   47 U.S.C. § 531(a). PEG channels provide many benefits, "includ[ing] providing access to the legislative process of the local governments, reporting on local issues, providing a forum for local candidates for office, and providing a platform for local communities—including minority communities."  FCC, Third Report and Order, *In The Matter Of Implementation Of Section 621(a)(1) Of The Cable Communications Policy Act Of 1984 As Amended By The Cable Television Consumer Protection And Competition Act Of 1992*, FCC 19-80, ¶ 50 (Aug. 2, 2019).  PEG channel fees and costs are assessed by local franchise authorities,

---

helping federal, state, and local officials provide the general public with advanced notification of and instruction during disasters and emergencies.").

often on a per-subscriber basis, and thus are not part of the cable operator pricing and bundling concerns addressed by L.D. 832.  *See id.* at ¶¶ 20-22.

For all the foregoing reasons, L.D. 832 does not apply to broadcast or PEG channels or programs, and thus does not implicate the basic service tier of section 623 of the Communications Act.  If this Court decides otherwise, for the reasons set forth in Plaintiff's brief, the statute would clearly be preempted.

## III.    CONCLUSION

NAB and MAB respectfully ask the Court to hold that L.D. 832 is preempted, or at a minimum inapplicable to broadcast channels and programs provided over a cable system.

LEGAL_US_E # 144184698.6

Respectfully submitted,

/s/ Timothy C. Woodcock

| | |
|---|---|
| Rick Kaplan (*pro hac vice pending*)<br>Erin Dozier (*pro hac vice pending*)<br>NATIONAL ASSOCIATION OF BROADCASTERS<br>1771 N Street, NW<br>Washington, DC  20036<br>rkaplan@nab.org<br>EDozier@nab.org<br>202-429-5430<br><br>Stephen B. Kinnaird (*pro hac vice pending*)<br>PAUL HASTINGS LLP<br>875 15th Street, NW<br>Washington, DC  20005<br>stephenkinnaird@paulhastings.com<br>(202) 551-1700 | Timothy C. Woodcock<br>EATON PEABODY<br>80 Exchange Street<br>Bangor, Maine 04401<br>twoodcock@eatonpeabody.com<br>207-992-4338<br><br><br><br><br><br><br><br><br>*Counsel for* amici curiae *National Association of Broadcasters and Maine Association of Broadcasters* |

**CERTIFICATE OF SERVICE**

I hereby certify that on September 17, 2019, I electronically filed the foregoing document with Clerk of the United States District Court for the District of Maine by using the CM/ECF system. I certify that the participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: September 17, 2019

                                              Respectfully submitted,

                                              /s/ Timothy C. Woodcock
                                              Timothy C. Woodcock

                                              EATON PEABODY
                                              80 Exchange Street
                                              Bangor, Maine 04401
                                              twoodcock@eatonpeabody.com
                                              207-992-4338