UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| COMCAST OF MAINE/NEW HAMPSHIRE, INC., et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civil Action No. 1:19-cv-000410-NT<br>)<br>) |
| STATE OF MAINE, et als., | )<br>)<br>) |
| Defendants | ) |

**DEFENDANT TOWN OF PHIPPSBURG'S MOTION TO DISMISS WITH INCORPORATED MEMORANDUM OF LAW**

NOW COMES  Defendant, Town of Phippsburg ("Town"), by and through its undersigned counsel, and hereby moves, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, to be dismissed as a party-defendant because the Court lacks subject matter jurisdiction over Plaintiffs' claims against it.

**INTRODUCTION**

Pursuant to the Complaint for Declaratory and Injunctive Relief (the "Complaint"), Plaintiffs have asked this Court to invalidate a new Maine law, "An Act to Expand Options for Consumers of Cable Television in Purchasing Individual Channels and Programs" ("the "Act"). P.L. 2019. Ch.308, requiring cable system operators such as Plaintiff Comcast of Maine/New Hampshire, Inc., et als ("Plaintiffs") to provide "a la carte" content to its subscribers. Compl. ¶¶ 1,14. However, Plaintiffs have not alleged that any action taken, or anticipated to be taken, by the Town will cause Plaintiffs certain and cognizable injury. Instead, Plaintiffs presuppose that the mere ability of each Town, as a local cable television system franchise authority, to enforce the Act will cause an injury to Plaintiffs that is both enough and immediate enough to cause this action.

1

Compl. ¶ 67. Plaintiffs' claims against the Town are not ripe for adjudication. Accordingly, this Court lacks subject matter jurisdiction over Plaintiffs' claims against the Town, and the Town must be dismissed as a party-defendant pursuant to Fed. R. Civ. P. 12(b)(1).

## FACTUAL BACKGROUND

The Act became effective on September 19, 2019. Compl. ¶ 58. The Act contains a single sentence amendment to 30-A M.R.S. A. § 3008(3), providing that "a cable system operator shall offer subscribers the option of purchasing access to cable channels, or programs on cable channels, individually." Compl. ¶ 1. The Act does not require any municipal action, nor does it invalidate the terms of any existing cable franchise agreement. Instead, the Act simply requires cable companies operating in Maine—including Plaintiff Comcast Cable—to offer "à la carte" programming to customers, despite any requirements contained in an existing cable franchise agreement. *Id.* Plaintiffs do not complain of immediate harm caused by the Act's passage, but only of potential injury that would be suffered in the event a hypothetical municipality were to enforce the Act's à la carte requirement against a cable operator. *Id*. ¶¶ 8-9.

## STANDARD OF REVIEW

The party invoking federal jurisdiction bears the burden of proving that its claims are ripe for adjudication. *Rhode Island Ass'n of Realtors v. Whitehouse*, 199 F.3d 26, 33 (1st Cir. 1999). To survive a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12) (b)(6), a plaintiff must plead facts sufficient to establish every element of the claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

For the purposes of review of a motion to dismiss for want of jurisdiction, the court will "accept as true all material allegations in the complaint and construe them in plaintiffs' favor." *Blum v. Holder*, 744 F.3d 790, 795 (1st Cir. 2014). However, "this tenet does not apply to

'statements in the complaint that merely offer legal conclusions couched as facts or are threadbare or conclusory.'" *Id.* (quoting *Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 33 (1st Cir. 2011)). Nor does this presumption apply to "allegations so speculative that they fail to cross the line between the conclusory and the factual." *Id.* (quoting *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592, 595 (1st Cir. 2011)). The complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). If the facts alleged, if taken as true, would not "state a claim to relief that is plausible on its face," the action must be dismissed. *Iqbal,* 556 U.S.at 678 (quoting *Twombly*, 550 U.S. at 670).

## ARGUMENT

### I.    Plaintiffs Have Failed to State A Claim Against the Towns Under Section 1983

Regardless of the merits of Plaintiffs' claims against Governor Mills and Attorney General Frey, the Complaint fails to state a claim against the Towns because Plaintiffs have wholly failed to allege—and could not truthfully allege—that there is a *municipal* custom, policy, or practice at issue in this case that violates the constitutional rights of Plaintiffs. *See generally* Compl. Under the seminal Supreme Court decision in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), and the case law following it, the Town cannot be held liable under 42 U.S.C. § 1983 because there is no such policy and Plaintiffs' claims are predicated solely on the passage of a state law.

In *Monell*, the Supreme Court held that municipal liability pursuant to Section 1983 requires the formal adoption of an unconstitutional policy, ordinance, regulation, or decision by the municipality itself. 436 U.S. at 690. The Court stated:

> Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision *officially adopted and promulgated by that body's officers*. . .. On the other hand, the language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be

3

> held liable unless action *pursuant to official municipal policy* of some nature caused a constitutional tort.

*Id.* at 690-91 (emphasis added) (footnote omitted). Liability under *Monell* may also be established by demonstrating municipal "practices . . . so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* at 691 (quotation marks omitted). In either case, however, municipal liability pursuant to Section 1983 requires an official municipal policy, ordinance, decision, or settled practice. *Id.*

In other words, the standard for establishing municipal liability under Section 1983 is heightened and requires some action *of the municipality itself*. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("[U]nder § 1983, local governments are responsible only for their *own* illegal acts.") (emphasis in original) (quotation marks omitted). Indeed, the municipal policy must be the "moving force" behind the violation. *Monell*, 436 U.S. at 694. "[M]unicipal liability under § 1983 attaches where—*and only where*—a deliberate choice to follow a course of action is made from among various alternatives by [the municipality] with respect to the subject matter in question." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483 (1986) (emphasis added).

Here, Plaintiffs have not alleged—and cannot allege—the formal adoption of a municipal policy, ordinance, or "custom or usage" that is the "moving force" behind any injury because, as discussed above and as the Complaint acknowledges, the Town has taken *no* action with respect to L.D. 832. At most, Plaintiffs' claims against the Town are based solely on Plaintiffs' allegation that the Town *could* seek to enforce L.D. 832 at some indefinite point in the future, though the Town has yet to do so. *See, e.g.*, Compl. This is insufficient to bring a claim pursuant to Section 1983. *See Surplus Store and Exch., Inc. v. City of Delphi*, 928 F.2d 788, 791 n.4 (7th Cir. 1991) (refusing to construe a state law as a municipal policy for a Section 1983 claim on the ground that doing so "would allow municipalities to be nothing more than convenient receptacles of liability

4

for violations caused entirely by state actors—here, the [state] legislature"); *Wong v. City & Cnty. of Honolulu*, 333 F. Supp. 2d 942, 951 (D. Haw. 2004) ("[M]ere enforcement of a state statute is not a sufficient basis for imposing § 1983 municipal liability."); *Anderson v. Town of Durham*, No. CV-02-480, 2003 WL 25826919 (Me. Super. May 14, 2003) (reiterating that "*any* municipal liability under section 1983, regardless of the relief sought, must be premised on some culpable act that can fairly be attributed to the municipality") (emphasis in original) (citing *Strout v. Maine Dept. of Education,* No. 97-259-B-H (D. Me., Jan. 26, 1998) (Hornby, J.)). This is fatal to Plaintiffs' claims against the Town, which should therefore be dismissed.

Certain courts have held that *Monell* proscribes municipal liability where enforcement of a state statute is mandatory, but that a municipality could be held liable for enforcing a statute it has discretion to enforce under appropriate circumstances:

> [W]e agree with all circuits to address state laws mandating enforcement by municipal police offers that a municipality's decision to honor this obligation is not a conscious *choice*. As a result, the municipality cannot be liable under *Monell* in this circumstance. On the other hand, if a municipality decides to enforce a statute that it is authorized, but not required, to enforce, it may have created a municipal policy. However, we do not believe that a mere municipal directive to enforce all state and municipal laws constitutes a city policy to enforce a particular unconstitutional statute. . .. [I]t is necessary, at a minimum, that a municipal policymaker have focused on the particular statute in question. We, therefore, hold that there must have been conscious decision making by the City's policymakers before the City can be held to have made a conscious choice.

*Vives v. City of New York*, 524 F.3d 346, 353 (2d Cir. 2008) (emphasis in original) (footnotes omitted). While the First Circuit has not weighed in on this issue, under either of the scenarios discussed above, Plaintiffs' claims against the Town would fail. If enforcement of L.D. 832 is mandatory, then Plaintiffs have no Section 1983 claim against the Town under *Monell*. *See Vives*, 524 F.3d at 353. If, on the other hand, the Town has discretion to enforce L.D. 832, then Plaintiffs lack standing against the Town and its claims are unripe, and Plaintiffs still have not stated a sufficient municipal policy or act, because the Town has not taken or so much as threatened

5

such action. *See, e.g., Nichols v. Brown*, 859 F. Supp. 2d 1118, 1127 (C.D. Cal. 2012) (finding no standing against municipal defendants who could seek to enforce a state law, but had not yet done so, since "mere enforcement of a state statute is not a sufficient basis for imposing § 1983 municipal liability" (quotation marks omitted)). Thus, under any scenario, Plaintiffs' Section 1983 claims against the Town fail as a matter of law.

In short, *Monell* imposes a heightened requirement for Section 1983 liability against municipalities, and requires some independent, deliberate conduct on the part of the municipality before liability pursuant to Section 1983 will attach. Plaintiffs have failed to allege any such conduct here. Accordingly, Plaintiffs have failed to state a claim against the Town, and they should therefore be dismissed.

## II.     Plaintiffs Do Not Have Standing to Bring This Suit Against the Town

"Article III, § 2, of the Constitution restricts the federal 'judicial Power' to the resolution of 'Cases' and 'Controversies.' That case-or-controversy requirement is satisfied only where a plaintiff has standing." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008). As an "irreducible constitutional minimum," the party asserting standing has the burden to demonstrate that three elements are met. *Lujan*, 504 U.S. at 560. Specifically, a plaintiff must show that: (1) it has "suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical'"; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 560–61 (citations and internal quotation marks omitted). "A failure to meet any one of these three criteria constitutes a 'lack of Article III standing and requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).'" *Nichols*, 859 F. Supp. 2d at 1127

(alteration omitted) (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011)). Here, Plaintiffs fail to satisfy all three elements of standing with respect to the Town.[1]

### A. Plaintiffs Have Not Suffered Any Injury in Fact Vis-à-vis the Town

"The first and foremost concern in standing analysis is the requirement that the plaintiff establish an injury in fact." *Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017) (alteration and quotation marks omitted). As noted above, to satisfy Article III standing, the injury must be "concrete and particularized" and "actual or imminent," not "conjectural" or "hypothetical." *Lujan*, 504 U.S. at 560. "This requirement 'ensures that the harm has either happened or is sufficiently threatening; it is not enough that the harm might occur at some future time.'" *Gustavsen v. Alcon Labs., Inc.*, 903 F.3d 1, 8 (1st Cir. 2018) (citing *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012)). "[I]f a future injury is 'too speculative for Article III purposes and no prosecution is even close to impending,' then there is no standing to sue." *Reddy*, 845 F.3d at 500 (internal quotation marks omitted).

Here, Plaintiffs' allegations of injury vis-à-vis the Town are entirely speculative and rest upon contingent future events, and therefore do not demonstrate the "actual or imminent" injury necessary to establish standing. As noted above, Plaintiffs have not made any specific allegations against the Town that it has taken any actions with regards to enforcing L.D. 832. Compl. ¶ . There is no allegation that the Town has taken such action, or that either Town has so much as threatened any enforcement action or revocation of their franchise agreement. Thus, Plaintiffs have wholly failed to establish that any enforcement action by the Town is imminent or "is even close to

---

[1] Standing must be separately analyzed with respect to each defendant. See Easter v. American West Fin., 381 F.3d 948, 961–62 (9th Cir. 2004) (holding that the district court properly found the plaintiffs lacked standing to sue certain defendants, because the alleged injury was not fairly traceable to those defendants); In re Carrier IQ, Inc., 78 F. Supp. 3d 1051, 1069 (N.D. Cal. 2015) ("[T]o hold each defendant in the case, there must be at least one named plaintiff with standing to sue said defendant.").

7

impending," and any injury to Plaintiffs as a result of some theoretical future action by Phippsburg is purely "conjectural" and "hypothetical" at this time. *Reddy*, 845 F.3d at 500 (quotation marks omitted).

While the Complaint's total lack of any allegations demonstrating an actual or imminent injury by the Town is sufficient in itself to warrant dismissal, the Court should also find that Plaintiffs have failed to establish any injury in fact with reference to the specific procedural requirements for undertaking action against Plaintiffs pursuant to the Phippsburg cable franchise agreement. The Court may consider these agreements on this Motion because they establish a lack of jurisdictional standing, and because they are referred to in the Complaint and their authenticity is not in dispute.[2] *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002) ("The attachment of exhibits to a Rule 12(b)(1) motion does not convert it to a Rule 56 motion."); *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (where factual allegations are "expressly linked to" and depend on a document whose authenticity is not disputed, the document merges into the pleadings even if not attached to the complaint).

Here, the franchise agreement contains provisions that purport to require lengthy processes and procedures before the Town may revoke or terminate its franchise agreement for alleged material breach, which further demonstrate the lack of any actual or imminent injury vis-à-vis the Town. *Cf.* Compl. (alleging, as the only basis for injury, that the Town "may" attempt to revoke their franchise agreements). Comcast's franchise agreement with Phippsburg states that the Town must provide written notice of intent to revoke the franchise, after which Comcast *has 90 days* to

---

[2] The franchise agreement is an exhibit to the declaration of Amber Jones, submitted with the Town's Opposition to Plaintiffs' Motion for a Preliminary Injunction. In addition, pursuant to Maine law, cable operators are required to post their most recent franchise agreements on their website. See 30-A M.R.S.A. § 3010(8) ("A cable system operator that maintains a publicly accessible website shall post on that website a copy of the most recently executed franchise agreement for each franchise that it has been granted by a municipality in the State."). Comcast's franchise agreement with Phippsburg may be found here: https://www.xfinity.com/mainefranchises.

correct or dispute the alleged violation. Declaration of Amber Jones ("Jones Decl."), Ex. A (Franchise Agreement), at 33, § 26(B). If Comcast disputes the alleged violation and the Town continues to maintain a violation has occurred, Comcast is granted a *further 90-day cure period*. *Id.* There is no allegation that the Town has invoked these procedures or has provided any notice of an intent to revoke or modify the franchise agreement, formal or informal. *Cf.* Compl.

In short, Plaintiffs have wholly failed to establish that any enforcement action by the Town is "actual or imminent" or "even close to impending," and any injury to Plaintiffs as a result of any action by the Towns is purely "conjectural" and "hypothetical" at this time. It would be bad public policy and contrary to established jurisdictional principles to permit deep-pocket corporations to force local municipalities into federal court under these circumstances, merely because a state statute is enacted that municipalities could theoretically enforce at some indefinite time in the future. Accordingly, the Court should dismiss this action as against the Town.

### B. Plaintiffs' Allegations of Harm Are Not Fairly Traceable to Any Challenged Conduct of The Town

Relatedly, and equally important, the alleged harm must be "fairly traceable" to some challenged conduct of a defendant for standing to exist as to that defendant. *Lujan*, 504 U.S. at 560. This causation requirement demands "proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005). "Because the opposing party must be the source of the harm, causation is absent if the injury stems from the independent action of a third party." *Katz*, 672 F.3d at 71–72.

Courts have held that the mere right to sue under a challenged statute, or to seek to enforce a statute, does not satisfy the causation element. In *Nova Health Sys.*, the Tenth Circuit Court of Appeals considered a constitutional challenge to an Oklahoma statute making abortion providers liable for any subsequent medical costs required by a minor because of an abortion performed

9

without parental consent. 416 F.3d at 1152. The plaintiff, Nova Health Services, brought suit against certain public officials who oversaw public health care facilities, and who could theoretically seek recovery against Nova pursuant to the statute. *Id.* The court noted that these defendants had "not attempted to recover any medical costs from Nova under the challenged statute, although it is possible that they may seek to do so sometime in the future." *Id.* The Court held that "Nova lacked standing to bring this lawsuit because it has not shown that the injury it may have suffered due to the challenged Oklahoma law was caused by these particular defendants or that it would be redressed by a judgment against them." *Id.* at 1153.

On the issue of causation, the Tenth Circuit found that the plaintiff had "failed to show the required causal connection between its injury and these defendants." *Id.* at 1157. The court first noted that "there is no evidence that the defendants have done or have threatened to do anything that presents a substantial likelihood of causing Nova harm." *Id.* The court observed that Nova had "confused the *statute's* immediate coercive effect on the plaintiff with any coercive effect that might be applied by the *defendants*." *Id.* (emphasis in original) (alterations and quotation marks omitted). The court noted that while "[i]t may be true that these defendants potentially have the power to sue Nova under [the statute], . . . if these defendants' latent power to litigate were enough to support standing, *anyone* who might someday have a claim under [the statute] could be summoned preemptively before the federal courts to defend the constitutionality of that statute." *Id.* (emphasis in original). The Tenth Circuit summed up: "Article III does not allow a plaintiff who wishes to challenge state legislation to do so simply by naming as a defendant anyone who, under appropriate circumstances, might conceivably have an occasion to file a suit for avid damages under the relevant state law at some future date." *Id.* at 1157–58; *cf.*

10

Similarly, in *Nichols v. Brown*, a California federal district court held that a plaintiff lacked standing against municipal defendants to challenge a state statute on constitutional grounds where the municipal defendants had not sought to enforce the state law. 859 F. Supp. 2d at 1132–33. The court noted that "Plaintiff has failed to allege facts establishing that the [municipal defendants] have a sufficient connection to his alleged injury to establish jurisdiction." *Id.* at 1132. The court noted that "Plaintiff's injury, as currently alleged, is not traceable to the [municipal defendants]. Section 25850 is a state law, not a municipal ordinance." *Id.* at 1133. The court observed that, "[a]t most, Plaintiff's claim against the [municipal defendants] appears to be based on the fact that these defendants enforce state law, including section 25850." *Id.* The court noted that "mere enforcement of a state statute is not a sufficient basis for imposing § 1983 municipal liability." *Id.* (quotation marks omitted). On this basis, the court held that the "Plaintiff's claims do not establish that the [municipal defendants] have any connection to his alleged injury and fail to satisfy the second prong of the standing analysis." *Id.* at 1134.

Similarly, here, any injury asserted or suffered by Plaintiffs is not fairly traceable to the Town. L.D. 832 is a state law, not a municipal ordinance. There is no allegation that the Town has sought, in any way, to enforce L.D. 832 against Plaintiffs. There is no allegation that the Town has sought to amend its franchise agreement with Plaintiffs on the basis of L.D. 832. There is no allegation that any municipal ordinance has been enacted on the basis of L.D. 832. Plaintiffs have not provided any basis on which the Court could conclude that the Town would seek to enforce L.D. 832, which is a further reason that Plaintiffs have failed to establish that any injury is fairly traceable to the Town before the Court.

There is no allegation of *any* conduct by the Town that has caused or contributed to the alleged injuries of Plaintiffs, and thus Plaintiffs have failed to satisfy their burden to demonstrate

11

an injury that is fairly traceable to the Town. At most, Plaintiffs'' claims against the Town rests on its wholly speculative allegation that the Towns "*may*" seek to enforce L.D. 832 at some indefinite point in the future. If this were enough to support standing, then a person could be hailed into federal court any time a statute was enacted that conferred a theoretical right of action on that person, which is contrary to established jurisdictional precedent and just public policy. For all these reasons, the Court should find that any injury suffered by Plaintiffs is not fairly traceable to the Towns.

### C. The Alleged Injuries Will Not Be Redressed by Relief Against the Town

Finally, any alleged injuries to Plaintiffs will not be redressed by relief against the Town, and full and fair relief can be accorded without the Town in this lawsuit. Plaintiffs have franchise agreements with many Maine municipalities, which would render any relief accorded against the Town of Phippsburg in this lawsuit of negligible, if any, effect. Conversely, a decision by the Court with respect to Governor Mills and Attorney General Frey could accord full relief, and thus there is no need for the Town to be a party in the first instance. These facts demonstrate that the Town is included in this lawsuit purely as a litigation tactic rather than to ensure actual relief, either to make an example of the Town or to gain leverage. The Court should not tolerate such tactics by the cable companies and should therefore dismiss the Town.

### III. Plaintiffs' Claims Against the Town Are Not Ripe

A party invoking federal jurisdiction bears the burden of establishing both ripeness and standing. *See Rhode Island Ass'n of Realtors v. Whitehouse*, 199 F.3d 26, 33 (1st Cir. 1999) (ripeness); *Lujan*, 504 U.S. at 561 (standing). The ripeness doctrine "seeks to prevent the adjudication of claims relating to contingent future events that may not occur as anticipated, or indeed may not occur at all." *Reddy*, 845 F.3d at 500. The rationale is "to prevent the courts,

through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). "Standing and ripeness have a 'close affinity' and may even 'overlap' with each other." *Portland Pipe Line Corp. v. City of S. Portland*, 164 F. Supp. 3d 157, 171 (D. Me. 2016). "The overlap is most apparent in cases that deny standing because an anticipated injury is too remote." *McInnis-Misenor v. Maine Med. Ctr.*, 319 F.3d 63, 69 (1st Cir. 2003) (citing 13A C.A. Wright, A.R. Miller & E.H. Cooper, *Federal Practice and Procedure* § 3531.12, at 51 (2d ed. 1984)).

To determine whether a case is ripe for review, courts evaluate both "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Portland Pipe Line Corp.*, 164 F. Supp. 3d at 171 (quotation marks omitted). Fitness and hardship "are related but distinct." *Id*. at 174 (quotation marks omitted). Under the first prong of this test, a matter is not ripe for judicial review where "it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted); *see also City of Fall River, Mass. v. F.E.R.C.*, 506 F.3d 1, 6 (1st Cir. 2007) (stating that a matter is not ripe where it "involves uncertain events which may not happen at all" (quotation marks omitted)). Under the second prong, "[i]f the court's interest tends toward postponement, [the court] must then weigh this consideration against the immediate impact of the actions on the challengers, and whether that impact is so harmful that present consideration is warranted." *Id.* at 6 (quotations marks omitted).

Here, for the same reasons that Plaintiffs lack standing vis-à-vis the Town, Plaintiffs' claims are not ripe as against the Town. Plaintiffs' claims against the Town rest entirely on contingent future events that may not occur as anticipated or may not occur at all—specifically, the theoretical possibility that the Towns "may" seek to revoke their franchise agreements with

Plaintiffs or take some other unspecified future action with respect to L.D. 832. *Cf.* Compl. As noted above, there are lengthy requirements before the Town may revoke its franchise agreement, and the Town has not invoked such process. Accordingly, Plaintiffs' claims against the Town are not ripe.

Furthermore, there would be no hardship to Plaintiffs should the Court withhold consideration as to the Town at this time. If the Town is dismissed and subsequently seek enforcement of L.D. 832, the ripeness question may be reevaluated at that time, in the context of a developed factual record. Moreover, as noted above, a decision by the Court with respect to Governor Mills and Attorney General Frey would fully resolve Plaintiffs' claims. There will be no hardship to Plaintiffs if the Town is dismissed from this Lawsuit. Accordingly, the Court should find that Plaintiffs' claims against the Town are not ripe.

## CONCLUSION

For all the foregoing reasons, the Court should dismiss Plaintiffs' claims against, Defendant Town of Phippsburg pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated at Topsham this 7th day of October.

/s/ Jessica L. Maher
Jessica L. Maher
*jmaher@mb-law.com*
Attorney for Defendant
Town of Phippsburg

Moncure & Barnicle
P.O. Box 636
Brunswick, ME 04011
207-729-0856

## **CERTIFICATE OF SERVICE**

   I hereby certify that on this 7th day of October 2019, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                   /s/ Jessica L. Maher
                   Jessica L. Maher
                   *jmaher@mb-law.com*
                   Attorney for Defendant
                   Town of Phippsburg

Moncure & Barnicle
P.O. Box 636
Brunswick, ME 04011
207-729-0856