# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

COMCAST OF MAINE/NEW
HAMPSHIRE, INC.; A&E TELEVISION
NETWORKS, LLC; C-SPAN; CBS CORP.;
DISCOVERY, INC.; DISNEY
ENTERPRISES, INC.; FOX CABLE
NETWORK SERVICES, LLC;
NBCUNIVERSAL MEDIA, LLC; NEW
ENGLAND SPORTS NETWORK, LP;
AND VIACOM INC.,

      Plaintiffs,

v.

JANET MILLS, IN HER OFFICIAL
CAPACITY AS THE GOVERNOR OF
MAINE; AARON FREY, IN HIS OFFICIAL
CAPACITY AS THE ATTORNEY
GENERAL OF MAINE; THE CITY OF
BATH, MAINE; THE TOWN OF
BERWICK, MAINE; THE TOWN OF
BOWDOIN, MAINE; THE TOWN OF
BOWDOINHAM, MAINE; THE TOWN OF
BRUNSWICK, MAINE; THE TOWN OF
DURHAM, MAINE; THE TOWN OF
ELIOT, MAINE; THE TOWN OF
FREEPORT, MAINE; THE TOWN OF
HARPSWELL, MAINE; THE TOWN OF
KITTERY, MAINE; THE TOWN OF
PHIPPSBURG, MAINE; THE TOWN OF
SOUTH BERWICK, MAINE; THE TOWN
OF TOPSHAM, MAINE; THE TOWN OF
WEST BATH, MAINE; AND THE TOWN
OF WOOLWICH, MAINE;

      Defendants.

CASE NO. 1:19-CV-00410-NT

DEFENDANT'S MOTION TO DISMISS FOR LACK
OF SUBJECT MATTER JURISDICTION
PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 12(B)(1)

**MOTION OF DEFENDANT TOWN OF HARPSWELL TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION AND
INCORPORATED MEMORANDUM OF LAW**

Defendant Town of Harpswell (hereinafter, the "Town"), through its undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(1) hereby respectfully moves to dismiss the complaint against the Town for failure to state a justiciable claim pursuant to Article III of the Constitution of the United States.  In support of this motion, the Town states the following.

The Town and plaintiff Comcast of Maine/New Hampshire, Inc. (hereinafter "Comcast") are parties to a cable television franchise agreement which was entered into on or about September 24, 2010.   On September 6, 2019, Comcast, and an array of providers who offer video programming content to cable subscribers (hereinafter "Plaintiffs"), filed suit against the Governor of the State of Maine and the Maine Attorney General (hereinafter "State"), the Town, and a number of other municipalities.   The Plaintiffs' operative complaint challenges the constitutionality of a recently adopted provision which purportedly bears on the program offerings of cable providers, which is commonly known as L.D. 832.  L.D. 832, § 3008(3) (129th Legis. 2019).  L.D. 832 provides that "[n]otwithstanding any provision in a franchise, a cable system operator shall offer subscribers the option of purchasing access to cable channels, or programs on cable channels, individually."  *Id*.  As framed by the complaint, L.D. 832 imposes an à la carte mandate on cable and video programming providers.  The Plaintiffs' suit asserts that L.D. 832, is preempted by Federal law and infringes on the Plaintiffs' First Amendment rights. Pl.'s Complaint at ¶¶ 1-5.  The Plaintiffs further contend that the Town, and other named municipalities in the lawsuit, are properly joined as parties to the lawsuit because, as amended by L.D. 823, 30-A M.R.S. § 3008(2) provides municipalities with the authority to enact ordinances regulating cable franchise

agreements, and 30-A M.R.S. § 3008(3)(E) provides municipalities with the authority to enforce the provisions of L.D. 832.

This Court lacks jurisdiction to hear the Plaintiffs' claims as to the Town because a justiciable controversy between the Plaintiffs and the Town does not exist.   A justiciable controversy—which is a prerequisite to this Court reaching the merits of the Plaintiff's claims as to the Town—is present as to a particular defendant where the plaintiff establishes standing as to that defendant and that the claim, again as to the particular defendant, is ripe for judicial review. *Reddy v. Foster*, 845 F.3d 493, 499-500 (1st Cir. 2017); *Golden Gate Transactional Independent Service, Inc. v. California*, CV 18-08093, 2019 WL 4222452, at *7 (C.D. Cal. May 1, 2019)(stating that the threshold constitutional standing requirement mandates that plaintiffs sufficiently allege Article III standing as to each named Defendant for each claim).  The Plaintiffs' claims against the Town cannot satisfy that standard, because the Town has not adopted the ordinance that is the predicate for enforcement of L.D. 832, and the Town has not sought to enforce any of the new statute's mandates.  *Reddy*, 845 F.3d at 503.  That is so for two reasons.  First, the Plaintiffs have failed to establish standing to assert any claims against the Town, because they have not sustained any injury as a result of the Town's actions.  The prospective and speculative possibility that the Town *could* enforce L.D. 832 does not confer standing on the Plaintiffs to bring a pre-enforcement challenge against the Town.  *See Olsen v. Hamilton*, 330 F. Supp. 3d 545, 553 (D. Me. 2018). Second, and for many of the same reasons, the Plaintiffs have not demonstrated that their claims, as applied to the Town, are ripe for judicial review.  The possibility of future injury, which is all the plaintiffs can point to here, does not ripen this claim into a justiciable controversy such that this Court can adjudicate the merits of the Plaintiffs' case.  *Roman Catholic Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 90 (1st Cir. 2013) (quoting *Simmonds v. INS*, 326 F.3d 351,

360 (2d Cir. 2003)). Additionally, the Town is not a necessary party to this suit, and because the claims against it are not justiciable, it cannot be joined as a necessary party in all events.

## ARGUMENT

Article III of the Constitution restricts federal court jurisdiction to actual "cases and controversies." *Hines v. Johnson*, 772 F. Supp. 678, 679 (D. Me. 1991). A justiciable controversy exists where a plaintiff has both standing, and the claim before the court is ripe for judicial review. *Id*.

To establish standing in federal court, a plaintiff bears the burden of demonstrating three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). First, a litigant must demonstrate that the controversy before the court constitutes "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560; *see also Olsen*, 330 F. Supp. 3d at 551. Second, "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560-61 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)). Third, it must be likely that a favorable decision from the court will redress the injury in question. *Id*. at 561. The courts have emphasized that these three requirements "are not mere pleading requirements but an indispensable part of the plaintiff's case, [and] each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with a manner and degree of evidence required at the successive stages of litigation." *Id*. Finally, in cases such as this one involving multiple defendants, the Court must assess matters such as standing, justiciability, and ripeness on a defendant-by-defendant basis. *Satchell v. Sonic Notify, Inc.*, 234 F. Supp. 3d 996,

1001 n. 2 (N.D. Cal. 2017) (stating that "[i]n cases 'where there are multiple defendants and multiple claims' the plaintiff must demonstrate Article III standing 'as to each defendant and each claim'" (quoting *Reniger v. Hyundai Motor America*, 122 F. Supp. 3d 888, 895 (N.D. Cal. 2015))). Such matters bear on the Court's ability to enter final orders, and thus to address a case on the merits, as to each such defendant.

To determine whether a claim against a defendant is ripe for adjudication, federal courts are directed to undertake a two-part analysis that considers whether the controversy is fit for judicial review and whether withholding a decision with respect to the claim before the court would impose harm upon the party seeking relief. *Reddy*, 845 F.3d at 501. A controversy is fit for judicial review where there is a "sufficiently live case or controversy, at the time of the proceedings," to vest jurisdiction with the federal courts. *Id.* Additionally, fitness measures "whether resolution of the dispute should be postponed in the name of 'judicial restraint from unnecessary decision of constitutional issues.'" *Roman Catholic Bishop of Springfield*, 724 F.3d at 89 (quoting *Mangual v. Rotger-Sabat*, 317 F.3d 45, 59 (1st Cir. 2003)). The court's hardship analysis simply examines whether some harm will befall the party seeking relief if the court withholds rendering a decision at this time. *Id.* Notably, the courts have determined that the "mere possibility of future injury . . . does not constitute hardship." *Id.* at 90 (quoting *Simmonds v. INS*, 326 F.3d 351, 360 (2d Cir. 2003)).

A motion to dismiss a claim for failure to articulate a justiciable controversy concerns the Court's subject matter jurisdiction, and is thus properly brought pursuant to Fed. R. Civ. P. 12(b)(1). *Maine Ass'n of Interdependent Neighborhoods v. Comm'r, Maine Dept. of Human Serv.*, 747 F. Supp. 88, 91 (D. Me. 1990). Notably, courts have distinguished between a motion to dismiss for lack of standing pursuant to Fed. R. of Civ. P. 12(b)(1), and standing challenged in a

Rule 56 motion for summary judgment. *Maine Ass'n of Interdependent Neighborhoods*, 747 F. Supp. at 91-92. In the context of a Rule 12(b)(1) motion, "the court will explicitly base its standing decision on its assessments of the facts." *Id.* at 92 (quoting *Haase v. Sessions*, 835 F.2d 902, 907 (D.C. Cir. 1987)). Pursuant to Rule 12(b)(1), a litigant may submit supporting affidavits, and "when the Court undertakes to examine affidavits filed with a Rule 12(b)(1) motion . . . the Court functions as a fact finder." *Id*.

## I. Plaintiffs lack standing to bring suit against the Town in this Court.

The Plaintiffs' Complaint is entirely devoid of any facts that would establish grounds for this Court to determine that the Plaintiffs have met the constitutional standing requirements enumerated in *Lujan*. To begin, the Plaintiffs have not demonstrated that the Town has invaded a legally protected interest that is particularized and concrete, actual, and imminent. *Lujan*, 504 U.S. at 560. It is an indisputable constitutional maxim that standing to attack a statute only exists where the plaintiff "has sustained or is immediately in danger of sustaining some direct injury *as the result of (the statute's) enforcement*." *Cramp v. Bd. of Pub. Instruction of Orange Cnty.*, 368 U.S 278, 283 (1961) (quoting *Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923)) (emphasis added). The Plaintiffs contend that L.D. 832's inclusion in 30-A M.R.S. § 3008 confers upon the Town the ability to enforce the provisions of L.D. 832 as to Comcast, and that the Town is properly joined as a party to the litigation based upon its authority to hypothetically enforce the statute as to its franchisee in the future. Pl's Complaint ¶¶ 26, 34. In essence, the Plaintiffs have brought a pre-enforcement claim seeking injunctive relief to prevent the Town from prospectively enforcing the provisions of L.D. 832. As discussed below, joining the Town to this lawsuit based solely on the prospective possibility that the Town could enforce the provisions of L.D. 832 as to

Comcast—notably just one of the plaintiffs to this action—offends this Court's well-established standing jurisprudence.

The Plaintiffs' speculative assertions regarding a statute the Town could, theoretically, prospectively enforce do not provide the basis to establish a particularized or actual injury that has been, or is currently, realized by the Plaintiffs. In *Reddy v. Foster*, the First Circuit Court of Appeals determined that pro-life advocates did not have standing to challenge a New Hampshire law that permitted reproductive healthcare facilities to establish a demarcation zone between the facilities' private entrances and public property where protesters could express their disapproval of the facilities' practices. *Reddy*, 845 F.3d at 496, 504. Specifically, the Court found that the plaintiffs had not experienced any injury, as required by standing doctrine jurisprudence, because demarcation zones had not been established by any reproductive healthcare facility as a pre-condition to enforcement of the statute. *Id*. at 502. Much like the reproductive healthcare facilities in *Reddy*, the Town has not established any ordinances or invoked "any other remedies available by law," 30-A M.R.S. § 3008(2)-(3), as a pre-condition to enforcement of L.D. 832.[1] Additionally, the Town would require the approval of its Selectmen before enforcing the mandates of L.D. 832, and the Town has not contemplated, and is not considering, such action at this time. *See* Declaration of Kristi Eiane ¶¶ 7-9. Accordingly, the Plaintiffs have not demonstrated that a cognizable injury has occurred, because the Town has not taken any action as a pre-condition to enforcement to impose the mandates of L.D. 832. Indeed, as to plaintiffs other than Comcast, the Town could not do so, as it has no relationship, contractual or otherwise, with those persons.

---

[1] The Plaintiffs' contend that the "*threatened* enforcement [of L.D. 832] would cause Plaintiffs to incur an immeasurable loss of consumer and commercial goodwill," but the Plaintiffs have not cited any instance where the Town, or any other municipal defendant for that matter, has enacted an ordinance or initiated litigation to impose the mandates of L.D. 832 on the Plaintiffs. Pl.'s Complaint at ¶ 8 (emphasis added).

Additionally, the Plaintiffs have not established a causal connection between the injury L.D. 832 allegedly imposes upon them, and the action, or more accurately inaction, of the Town as required by the second prong of the *Lujan*'s standing analysis. *Lujan*, 504 U.S. at 560.  The Plaintiffs complaint offers no explanation regarding how the Legislature's enactment of L.D. 832 has a causal relation to any actual conduct of the Town.  The Town does not dispute that the Plaintiffs may have a justiciable claim against the State, but the State's enactment of an allegedly unconstitutional statue cannot be "fairly . . . traced" to the authority the Town possesses to prospectively enforce § 3008.  *Simon*, 426 U.S. at 41-42.  Accordingly, the Plaintiffs' present remedy is to seek redress for the purported injury imposed by L.D. 832 against the State, not a municipality that had no hand in enacting the statute, and has not sought to enforce the statute.

Moreover, a preliminary injunction against the Town does not redress the alleged injury that L.D. 832 purportedly imposes on the Plaintiffs. *Lujan*, 504 U.S. at 561 (stating that the third requirement of the constitutional standing analysis requires plaintiffs to demonstrate that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision"). The Plaintiffs' contend that L.D. 832 is preempted and violates their First Amendment rights, and these claims are properly brought against the State by requesting declaratory relief from this Court.  Where the Plaintiffs seek to invalidate L.D. 832, the State is the only proper party to the dispute.  This is particularly true where the Town has not sought to enforce the provisions of L.D. 832.  As such, the Plaintiffs have not demonstrated, and cannot demonstrate, that including the Town as a party to the dispute will redress the alleged injury that L.D. 832 imposes upon them.

Accordingly, the Plaintiffs' claims against the Town are properly dismissed because the Plaintiffs have failed to establish that they have standing to bring suit against the Town before it has enforced L.D. 832.

**II. The Plaintiffs' claims with respect to the Town are not ripe for adjudication before this Court.**

The Plaintiffs' complaint also fails to demonstrate that their claims against the Town are ripe for adjudication before this Court.  The justiciability doctrines of standing and ripeness are closely related as both spring from Article III of the Constitution.  *Reddy*, 845 F.3d at 500.  Put plainly, the fundamental purpose of the Court's ripeness inquiry is to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Roman Catholic Bishop of Springfield*, 724 F.3d at 89 (quoting *Abbott Labs v. Gardner*, 387 U.S. 136, 148 (1967)).  As explained below, the Plaintiffs have failed to satisfy either the fitness or hardship prongs of the constitutional ripeness analysis.

The Plaintiffs' claims against the Town are unfit for adjudication because such claims are entirely predicated on "uncertain and contingent events that may not occur as anticipated or may not occur at all."  *Town of Barnstable v. O'Connor*, 786 F.3d 130, 143 (1st Cir. 2015)(internal citations omitted).  As noted above, there is no evidence that the Town has sought to enforce, or intends to enforce, the mandates of L.D. 832.  Until the Town takes affirmative measures to enforce the à la carte provisions of L.D. 832, such as adopting the sort of ordinance contemplated by the amendment or taking other enforcement measures, the Court simply has "no concrete dispute before [it]," because the Town has taken no action that affects the Plaintiffs' cable service offerings or programming.  *Penobscot Nation v. Mills*, 861 F.3d 324, 338 (1st Cir. 2017) (holding that the Penobscot Indian Nation's claim was not ripe, where the State of Maine rendered an opinion as to the location of the Penobscot Nation's sustenance fishing rights, because Maine had not interfered with or threatened to interfere with the Nation's sustenance fishing rights in accordance with its opinion).

Similarly, the Plaintiffs have failed to establish the second ripeness requirement, because the mere threat of future injury is insufficient to establish hardship. *Roman Catholic Bishop of Springfield v. City of Springfield*, 724 F.3d at 90 (internal citations omitted). The proper juncture for the Plaintiffs to bring suit against the Town is when the Town seeks to enforce L.D. 832's à la carte provisions. Until then, "there is no apparent prejudice to the [P]laintiffs if they must wait until their claims ripen to sue." *Penobscot Nation*, 861 F.3d at 338 (holding that Penobscot Nation failed to meet the hardship prong of the ripeness analysis, because the State of Maine had not taken any steps to interfere with the Nation's sustenance fishing rights).

Therefore, the Town respectfully requests that this Court dismiss the Plaintiffs' complaint against the Town for failure to assert a justiciable claim based on "something more than the speculative risk of prosecution." *McCollester v City of Keene*, 668 F.2d 617, 621 (1st Cir. 1982).

**III. The Town is not a necessary party to this dispute.**

The Plaintiffs may try to argue that they cannot be afforded complete relief without joinder of the Town and its fellow municipalities, and that such persons are somehow necessary to fully adjudicate this matter. That argument fails for two reasons. First, as noted above, the Towns cannot be joined because there is no justiciable claim against the Town. Additionally, the Town is not a necessary party in a suit contesting the alleged constitutionality of L.D. 832. Fed. R. Civ. P. 19(a) sets forth the circumstances under which a party is "necessary" in a dispute. Rule 19 states that "A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if . . . in that person's absence, the court cannot accord complete relief among existing parties" or if "that person claims an interest relating to the subject of the action" and if resolving the claim in the party's absence would "impair or impede

the person's ability to protect the interest" or expose an existing party to substantial risk of multiple or inconsistent obligations.  Fed. R. Civ. P. 19.

Presently, the Court can afford complete declaratory and injunctive relief in this suit if the Town, and the other named municipalities in the suit, were dismissed.  Should this Court declare that the provisions of L.D. 832 are unconstitutional, and strike the law, then the Plaintiffs have achieved the relief that they seek.  *See La Plaza Defense League v. Kemp*, 742 F.Supp. 792, 806-07 (S.D. N.Y. 1990) (holding that city was not a necessary party, where Department of Housing and Urban Development (HUD) approved funding to build low-income housing and demolish a cultural facility, because complete relief could be afford against HUD "without restricting the City's right to use the property as it sees fit").  The Court can afford such relief without necessitating the Town's further involvement in the suit.  While it could be argued that the Town must be a party to the litigation for the court to award temporary injunctive relief, as noted above, the Plaintiffs' claims for injunctive relief will not ripen *unless* and *until* the Town seeks to enforce L.D. 832.  Accordingly, the Town objects to the imposition of a preliminary injunction, because the Plaintiffs claims as against the Town do not present a justiciable controversy upon which injunctive relief is predicated.

<u>Conclusion</u>

For the reasons stated above, the Plaintiffs' complaint against the Town must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because a justiciable controversy does not exist between the Plaintiffs and the Town, and therefore this Court does not have subject matter jurisdiction to adjudicate the alleged dispute.

Dated: October 7, 2019

/s/ *Jeffery T. Piampiano*
Jeffery T. Piampiano
Amy K. Tchao

DRUMMOND WOODSUM
84 Marginal Way, Suite 600
Portland, Maine 04101-2480
207-772-1941
jpiampiano@dwmlaw.com

Attorneys for Defendant
Town of Harpswell, Maine

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 7, 2019, I electronically filed the above Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will send notification of such filings to all counsel of record.

/s/ Jeffery T. Piampiano
Jeffery T. Piampiano
Amy K. Tchao

DRUMMOND WOODSUM
84 Marginal Way, Suite 600
Portland, ME 04101-2480
207-772-1941
jpiampiano@dwmlaw.com

Attorneys for Defendant
Town of Harpswell

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

COMCAST OF MAINE/NEW
HAMPSHIRE, INC.; A&E TELEVISION
NETWORKS, LLC; C-SPAN; CBS CORP.;
DISCOVERY, INC.; DISNEY
ENTERPRISES, INC.; FOX CABLE
NETWORK SERVICES, LLC;
NBCUNIVERSAL MEDIA, LLC; NEW
ENGLAND SPORTS NETWORK, LP;
AND VIACOM INC.,

      Plaintiffs,

v.

JANET MILLS, IN HER OFFICIAL
CAPACITY AS THE GOVERNOR OF
MAINE; AARON FREY, IN HIS OFFICIAL
CAPACITY AS THE ATTORNEY
GENERAL OF MAINE; THE CITY OF
BATH, MAINE; THE TOWN OF
BERWICK, MAINE; THE TOWN OF
BOWDOIN, MAINE; THE TOWN OF
BOWDOINHAM, MAINE; THE TOWN OF
BRUNSWICK, MAINE; THE TOWN OF
DURHAM, MAINE; THE TOWN OF
ELIOT, MAINE; THE TOWN OF
FREEPORT, MAINE; THE TOWN OF
HARPSWELL, MAINE; THE TOWN OF
KITTERY, MAINE; THE TOWN OF
PHIPPSBURG, MAINE; THE TOWN OF
SOUTH BERWICK, MAINE; THE TOWN
OF TOPSHAM, MAINE; THE TOWN OF
WEST BATH, MAINE; AND THE TOWN
OF WOOLWICH, MAINE;
              Defendants.

CASE NO. 1:19-CV-00410-NT

DECLARATION OF KRISTI EIANE IN SUPPORT
OF DEFENDANT TOWN OF HARPSWELL'S
MOTION TO DISMISS

## <u>DECLARATION OF KRISTI K. EIANE</u>

I, Kristi K. Eiane, hereby declare and affirm that the following statements are true and correct, and are based on my own personal knowledge:

1.      I am over 18 years of age, and I am competent to testify to the matters addressed in this Declaration.

2.      I am the Town Administrator for the Town of Harpswell, a municipality that is located in Cumberland County, Maine (hereinafter the "Town").

3.      As Town Administrator, I am the Town official responsible for overseeing and conducting the Town's daily affairs.

4.      The Town and Comcast of Maine/New Hampshire, Inc. (hereinafter "Comcast") are parties to a Cable Franchise Agreement.

5.      On September 6, 2019, Comcast and a number of video programming providers (hereinafter the "Plaintiffs") brought suit against the Town, and various other named defendants.

6.      I am aware that the basis of the Plaintiffs' suit is founded on the 129th Maine Legislature's enactment of L.D. 832, "An Act to Expand Options for Consumers of Cable Television in Purchasing Individual Channels and Programs," (hereinafter "L.D. 832"), and the Town's alleged ability to enforce this statute.

7.      To date, the Town has not taken any action to enforce L.D. 832 by either adopting the ordinance necessary to enforce the statute's provisions, seeking enforcement through the courts, or in any other manner.

8.      The Town's municipal officers are three Select Board members who together comprise the Town's Board of Selectmen, and the Board has the exclusive authority to enact ordinances relating to cable television systems.  *See* 30-A M.R.S. § 3008(2).

9.      The Town has not taken any measures, through its Board of Selectmen or otherwise, to enact an ordinance relating to L.D. 832, nor has it taken any related enforcement actions.  No such actions or measures are on any agenda for the Board of Selectmen, and as Town Administrator I have not instructed the Board of Selectmen to take any action regarding L.D. 832. Accordingly, there are no present or planned actions with regard to L.D. 832, or the enforcement thereof.

I declare under penalty of perjury that the foregoing statements are true and correct.

Date:  October 7, 2019                                   /s/ *Kristi K. Eiane*
                                                        Kristi K. Eiane, Town Administrator
                                                        Town of Harpswell, Maine