IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| COMCAST OF MAINE / NEW HAMPSHIRE, INC., *et al.*,<br><br>      Plaintiffs,<br><br>      v.<br><br>JANET MILLS, *et al.*<br><br>      Defendants. | Civil Action No.  1:19-cv-00410-NT |

## MOTION TO DISMISS

Defendants the Town of Berwick, the Town of Bowdoinham, the Town of Eliot, the Town of Freeport, the Town of South Berwick, and the Town of Topsham (collectively, the "Towns"), by their undersigned counsel, hereby move to dismiss, as against the Towns, the Complaint of Plaintiffs Comcast of Maine / New Hampshire, Inc. ("Comcast"), A&E Television Networks, LLC ("AETN"), National Cable Satellite Corp. ("C-SPAN"), CBS Corp. ("CBS"), Discovery, Inc. ("Discovery"), Disney Enterprises, Inc. ("DEI"), Fox Cable Network Services, LLC ("Fox"), NBCUniversal Media, LLC ("NBCUniversal"), New England Sports Network, LP ("NESN"), and Viacom Inc. ("Viacom") (collectively, the "Cable Companies").

### INTRODUCTION AND FACTUAL BACKGROUND

The Cable Companies have brought this suit challenging H.P. 606 – L.D. 832, "An Act to Expand Options for Consumers of Cable Television in Purchasing Individual Channels and Programs" ("L.D. 832").  L.D. 832 is a newly-enacted Maine state law that requires cable operators to "unbundle" television channels or programs—i.e., to allow customers to purchase individual channels or programs rather than purchasing only the bundled "tiers" of channels

typically offered by cable operators. Compl. ¶¶ 1, 42–43. The new statutory provision, which consists of a single new paragraph in a single subsection of the Maine Revised Statutes, states, in its entirety:

> Notwithstanding any provision in a franchise, a cable system operator shall offer subscribers the option of purchasing access to cable channels, or programs on cable channels, individually.

L.D. 832 (codified at 30-A M.R.S. § 3008(3)(F) (effective date 9/19/19)). The Cable Companies have brought claims pursuant to 42 U.S.C. §§ 1983 and 1988 (collectively, "Section 1983"), asserting that L.D. 832 is preempted by the Communications Act of 1934 and that L.D. 832 violates the First Amendment rights of the Cable Companies. Compl. ¶¶ 3, 67–68; 47 U.S.C. §§ 544(a), (b)(1). The Cable Companies have sued Governor Janet Mills, in her official capacity as the Governor of Maine, and Attorney General Aaron Frey, in his official capacity as the Attorney General of Maine, as well as a number of municipalities including the Towns. *See generally* Compl.

There is, however, a remarkable dearth of factual allegations against the Towns. *Id.* The Complaint asserts that the Towns could seek to enforce L.D. 832 because it is chaptered within 30-A M.R.S. § 3008, which contains a subsection that allows municipalities to seek "injunctive relief in addition to any other remedies available by law to protect any rights conferred upon the municipality by this section or any ordinances enacted under this section or section 3010." Compl. ¶ 67; 30-A M.R.S. § 3008(3)(E). The Complaint does not allege that any Town has taken such action. *See generally* Compl.

Indeed, the Cable Companies do not allege that the Towns have taken any measures to enforce L.D. 832 against the Cable Companies. *See generally* Compl. The Cable Companies do not allege that the Towns have threatened any enforcement action. *Id.* The Cable Companies do

not allege that the Towns have adopted any policy or ordinance pursuant to L.D. 832. *Id.* They do not allege that the Towns so much as testified in support of L.D. 832. *Id.* In short, there is no allegation that the Towns have done anything at all in relation to L.D. 832. The only allegation raised with respect to the Towns is that they have been allegedly "charged with enforcing L.D. 832" pursuant to the pre-existing statutory section quoted above. Compl. ¶ 67

This is insufficient to assert a claim against the Towns, for several reasons. First, the Cable Companies' claim against the Towns fail because municipal liability pursuant to Section 1983 will not lie where the only allegation against the Towns is that they have the authority to act upon and enforce a state statute. Under established Supreme Court precedent, municipal liability pursuant to Section 1983 requires some established policy, ordinance, decision, or settled practice of the municipality itself that is the moving force behind the constitutional violation. There is none here. Second, the Cable Companies do not have standing to assert claims against the Towns based upon nothing more than the theoretical possibility that the Towns could, at some indefinite point in the future, seek to enforce L.D. 832. Finally, the Cable Companies' claims against the Towns are not ripe. For all these reasons, as set forth in greater detail below, the Cable Companies' claims against the Towns should be dismissed for failure to state a claim and for lack of subject matter jurisdiction.[1]

## LEGAL STANDARD

To survive a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead facts sufficient to establish every element of the claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[1] The Towns incorporate herein by reference any arguments made by the other municipal defendants in any motion to dismiss or opposition to the Cable Companies' request for a preliminary injunction.

The complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* If the facts alleged, taken as true, would not "state a claim to relief that is plausible on its face," the action should be dismissed. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

In addition, Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for lack of subject matter jurisdiction. The Cable Companies, as the party seeking to invoke the jurisdiction of the federal courts, have the burden of establishing such jurisdiction, including that all the elements of standing are met. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). At the pleadings stage, "the plaintiff must 'clearly . . . allege facts demonstrating' each element" of standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

## ARGUMENT

Regardless of the merits of the Cable Companies' claims against Governor Mills and Attorney General Frey, the Complaint wholly fails to state a claim against the Towns because the Cable Companies do not allege—and could not truthfully allege—that there is a *municipal* custom, policy, or practice at issue in this case that violates the constitutional rights of the Cable Companies. *See generally* Compl. Under the seminal Supreme Court decision *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), and the case law following it, the Towns cannot be held liable under Section 1983 because there is no such municipal policy and the Cable Companies' claims are predicated solely on the passage of a state law.[2]

---

[2] The Complaint fails to comply with Federal Rules of Civil Procedure 8(a)(1) and 10(b), as it does not contain "a short and plain statement of the claim" and the numbered paragraphs are not "each limited as far as practicable to a single set of circumstances." Rather, the Cable Companies' Complaint cites to case law and sets forth legal argument, and reads like a memorandum of law. The Towns should not be put to the burden and expense of responding to such a lengthy and argumentative Complaint, especially where,

In *Monell*, the Supreme Court held that municipal liability pursuant to Section 1983 requires the formal adoption of an unconstitutional policy, ordinance, regulation, or decision by the municipality itself. 436 U.S. at 690. The Court stated:

> Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision *officially adopted and promulgated by that body's officers*. . . .
>
> On the other hand, the language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action *pursuant to official municipal policy* of some nature caused a constitutional tort.

*Id.* at 690–91 (emphasis added) (footnote omitted). Liability under *Monell* may also be established by demonstrating municipal "practices . . . so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* at 691 (quotation marks omitted). In either case, however, municipal liability pursuant to Section 1983 requires an official municipal policy, ordinance, decision, or settled practice. *Id.*

In other words, the standard for establishing municipal liability under Section 1983 is heightened and requires some action *of the municipality itself*. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("[U]nder § 1983, local governments are responsible only for their *own* illegal acts.") (emphasis in original) (quotation marks omitted). Indeed, the municipal policy must be the "moving force" behind the violation. *Monell*, 436 U.S. at 694. "[M]unicipal liability under § 1983 attaches where—*and only where*—a deliberate choice to follow a course of action is made from among various alternatives by [the municipality] with respect to the subject matter in question." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483 (1986) (emphasis added).

---

as here, the Towns are not proper parties to this action in the first instance, for all the reasons set forth herein.

Here, the Cable Companies have not alleged—and cannot allege—the formal adoption of a municipal policy, ordinance, or "custom or usage" that is the "moving force" behind any injury because, as discussed above and as the Complaint implicitly acknowledges, the Towns have taken *no* action with respect to L.D. 832. At most, the Cable Companies' claims against the Towns are based solely on the assertion that the Towns have the theoretical authority to seek to enforce L.D. 832, though none of the Towns have yet sought to do so. *See, e.g.*, Compl. ¶ 67. This is insufficient to bring a claim pursuant to Section 1983. *See Surplus Store and Exch., Inc. v. City of Delphi*, 928 F.2d 788, 791 n.4 (7th Cir. 1991) (refusing to construe a state law as a municipal policy for a Section 1983 claim on the ground that doing so "would allow municipalities to be nothing more than convenient receptacles of liability for violations caused entirely by state actors—here, the [state] legislature"); *Wong v. City & Cnty. of Honolulu*, 333 F. Supp. 2d 942, 951 (D. Haw. 2004) ("[M]ere enforcement of a state statute is not a sufficient basis for imposing § 1983 municipal liability."); *Anderson v. Town of Durham*, No. CV-02-480, 2003 WL 25826919 (Me. Super. May 14, 2003) (reiterating that "*any* municipal liability under section 1983, regardless of the relief sought, must be premised on some culpable act that can fairly be attributed to the municipality") (emphasis in original) (citing *Strout v. Maine Dept. of Education,* No. 97-259-B-H (D. Me., Jan. 26, 1998) (Hornby, J.)). This is fatal to the Cable Companies claims against the Towns, which should therefore be dismissed.

Certain courts have held that *Monell* proscribes municipal liability where enforcement of a state statute is mandatory, but that a municipality could be held liable for enforcing a statute it has discretion to enforce under appropriate circumstances:

> [W]e agree with all circuits to address state laws mandating enforcement by municipal police offers that a municipality's decision to honor this obligation is not a conscious *choice*. As a result, the municipality cannot be liable under *Monell* in this circumstance. On the other hand, if a municipality decides to

> enforce a statute that it is authorized, but not required, to enforce, it may have created a municipal policy. However, we do not believe that a mere municipal directive to enforce all state and municipal laws constitutes a city policy to enforce a particular unconstitutional statute. . . . [I]t is necessary, at a minimum, that a municipal policymaker have focused on the particular statute in question. We, therefore, hold that there must have been conscious decision making by the City's policymakers before the City can be held to have made a conscious choice.

*Vives v. City of New York*, 524 F.3d 346, 353 (2d Cir. 2008) (emphasis in original) (footnotes omitted). While the First Circuit has not weighed in on this issue, under either of the scenarios discussed above, the Cable Companies' claims against the Towns would fail. If enforcement of L.D. 832 is mandatory, then the Cable Companies have no Section 1983 claim against the Towns under *Monell*. *See Vives*, 524 F.3d at 353. If, on the other hand, the Towns have discretion to enforce L.D. 832, then the Cable Companies lack standing against the Towns and their claims are unripe because none of the Towns have taken such action, and their claims fail for the further reason that they still have not alleged *any* municipal policy or action. *See, e.g., Nichols v. Brown*, 859 F. Supp. 2d 1118, 1127 (C.D. Cal. 2012) (finding no standing against municipal defendants who could seek to enforce a state law, but had not yet done so, since "mere enforcement of a state statute is not a sufficient basis for imposing § 1983 municipal liability" (quotation marks omitted)). Thus, under any scenario, the Cable Companies' Section 1983 claims against the Towns fail as a matter of law.

In short, *Monell* imposes a heightened requirement for Section 1983 liability against municipalities, and requires some independent, deliberate conduct on the part of the municipality before liability pursuant to Section 1983 will attach. Plaintiffs have failed to allege any such conduct here. Accordingly, Plaintiffs have failed to state a claim against the Towns, and the Towns should therefore be dismissed from this action.

## II. The Cable Companies Do Not Have Standing To Bring This Suit Against The Towns

"Article III, § 2, of the Constitution restricts the federal 'judicial Power' to the resolution of 'Cases' and 'Controversies.' That case-or-controversy requirement is satisfied only where a plaintiff has standing." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008). As an "irreducible constitutional minimum," the party asserting standing has the burden to demonstrate that three elements are met. *Lujan*, 504 U.S. at 560. Specifically, a plaintiff must show that: (1) it has "suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical'"; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 560–61 (citations and internal quotation marks omitted). "A failure to meet any one of these three criteria constitutes a 'lack of Article III standing and requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).'" *Nichols*, 859 F. Supp. 2d at 1127 (alteration omitted) (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011)). The Cable Companies fail to satisfy all three elements of standing with respect to the Towns.[3]

### A. The Cable Companies Have Not Suffered Any Injury In Fact Vis-à-vis The Towns

"The first and foremost concern in standing analysis is the requirement that the plaintiff establish an injury in fact." *Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017) (alteration and quotation marks omitted). As noted above, to satisfy Article III standing, the injury must be

---

[3] Standing must be separately analyzed with respect to each defendant. *See Easter v. American West Fin.*, 381 F.3d 948, 961–62 (9th Cir. 2004) (holding that the district court properly found the plaintiffs lacked standing to sue certain defendants, because the alleged injury was not fairly traceable to those defendants); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1069 (N.D. Cal. 2015) ("[T]o hold each defendant in the case, there must be at least one named plaintiff with standing to sue said defendant.").

"concrete and particularized" and "actual or imminent," not "conjectural" or "hypothetical." *Lujan*, 504 U.S. at 560. "This requirement 'ensures that the harm has either happened or is sufficiently threatening; it is not enough that the harm might occur at some future time.'" *Gustavsen v. Alcon Labs., Inc.*, 903 F.3d 1, 8 (1st Cir. 2018) (citing *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012)). "[I]f a future injury is 'too speculative for Article III purposes and no prosecution is even close to impending,' then there is no standing to sue." *Reddy*, 845 F.3d at 500 (internal quotation marks omitted).

Here, the Cable Companies' allegations of injury vis-à-vis the Towns are entirely speculative and rest upon contingent future events, and therefore do not demonstrate the "actual or imminent" injury necessary to establish standing. As noted above, the Cable Companies' only allegation of injury that relates to the Towns is their speculative assertion that the Towns *could* seek injunctive relief or legal remedies to "to protect any rights conferred upon the municipality" pursuant 30-A M.R.S. § 3008. Compl. ¶ 67 (emphasis added). There is no allegation that the Towns have taken any steps to enact an ordinance or exercise any other right under § 3008 with respect to L.D. 832, or that the Towns have so much as threatened any enforcement action. Thus, the Cable Companies have wholly failed to establish that any enforcement action is imminent or "is even close to impending," and any injury to the Cable Companies is purely "conjectural" and "hypothetical" at this time. *Reddy*, 845 F.3d at 500 (quotation marks omitted); *see also FrontierVision Operating Partners, L.P. v. Town of Naples, Maine*, No. 01-16-P-DMC, 2001 WL 220192, *6-7 (D. Me. March 7, 2001) ("[A]s a matter of law, courts may not enjoin the enactment of local ordinances in advance. . . . Unless and until the defendant enacts an ordinance . . . this court may not consider an application for injunction relief to [the plaintiff] concerning such an ordinance.").

In short, the Cable Companies have wholly failed to establish that any enforcement action by the Towns is "actual or imminent" or "even close to impending," as would be necessary to establish standing. It would be bad public policy and contrary to established jurisdictional principles to permit deep-pocket corporations to force local municipalities into federal court under these circumstances, merely because a state statute is enacted that municipalities could theoretically enforce at some indefinite time in the future. Accordingly, the Court should dismiss this action as against the Towns.

> **B.    The Cable Companies' Allegations Of Harm Are Not Fairly Traceable To Any Challenged Conduct Of The Towns**

Relatedly, and equally important, the alleged harm must be "fairly traceable" to some challenged conduct of a defendant in order for standing to exist as to that defendant. *Lujan*, 504 U.S. at 560. This causation requirement demands "proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005). "Because the opposing party must be the source of the harm, causation is absent if the injury stems from the independent action of a third party." *Katz*, 672 F.3d at 71–72.

Courts have held that the mere right to sue under a challenged statute, or to seek to enforce a statute, does not satisfy the causation element. In *Nova Health Sys. v. Gandy*, the Tenth Circuit Court of Appeals considered a constitutional challenge to an Oklahoma statute making abortion providers liable for any subsequent medical costs required by a minor because of an abortion performed without parental consent. 416 F.3d at 1152. The plaintiff, Nova Health Services, brought suit against certain public officials who oversaw public health care facilities, and who could theoretically seek recovery against Nova pursuant to the statute. *Id.* The court noted that these defendants had "not attempted to recover any medical costs from Nova under the

10

challenged statute, although it is possible that they may seek to do so sometime in the future." *Id.* The court held that "Nova lacked standing to bring this lawsuit because it has not shown that the injury it may have suffered due to the challenged Oklahoma law was caused by these particular defendants or that it would be redressed by a judgment against them." *Id.* at 1153.

On the issue of causation, the Tenth Circuit found that the plaintiff had "failed to show the required causal connection between its injury and these defendants." *Id.* at 1157. The court first noted that "there is no evidence that the defendants have done or have threatened to do anything that presents a substantial likelihood of causing Nova harm." *Id.* The court observed that Nova had "confused the *statute's* immediate coercive effect on the plaintiff with any coercive effect that might be applied by the *defendants*." *Id.* (emphasis in original) (alterations and quotation marks omitted). The court further explained that while "[i]t may be true that these defendants potentially have the power to sue Nova under [the statute], . . . if these defendants' latent power to litigate were enough to support standing, *anyone* who might someday have a claim under [the statute] could be summoned preemptively before the federal courts to defend the constitutionality of that statute." *Id.* (emphasis in original). The Tenth Circuit summed up: "Article III does not allow a plaintiff who wishes to challenge state legislation to do so simply by naming as a defendant anyone who, under appropriate circumstances, might conceivably have an occasion to file a suit for avid damages under the relevant state law at some future date." *Id.* at 1157–58.

Similarly, in *Nichols v. Brown*, a California federal district court held that a plaintiff lacked standing against municipal defendants to challenge a state statute on constitutional grounds where the municipal defendants had not sought to enforce the state law. 859 F. Supp. 2d at 1132–33. The court noted that "Plaintiff has failed to allege facts establishing that the

11

[municipal defendants] have a sufficient connection to his alleged injury to establish jurisdiction." *Id.* at 1132. The court noted that "Plaintiff's injury, as currently alleged, is not traceable to the [municipal defendants]. Section 25850 is a state law, not a municipal ordinance." *Id.* at 1133. The court observed that, "[a]t most, Plaintiff's claim against the [municipal defendants] appears to be based on the fact that these defendants enforce state law, including section 25850." *Id.* The court noted that "mere enforcement of a state statute is not a sufficient basis for imposing § 1983 municipal liability." *Id.* (quotation marks omitted). On this basis, the court held that the "Plaintiff's claims do not establish that the [municipal defendants] have any connection to his alleged injury and fail to satisfy the second prong of the standing analysis." *Id.* at 1134.

Similarly, here, any injury asserted or suffered by the Cable Companies is not fairly traceable to the Towns. L.D. 832 is a state law, not a municipal ordinance. There is no allegation that any municipal ordinance has been enacted on the basis of L.D. 832, or that the Towns have sought, in any way, to enforce L.D. 832. The Cable Companies have not provided any basis on which the Court could conclude that any of the Towns—as opposed to one of the other Defendants, or one or more of the hundreds of other Maine municipalities—would seek to enforce L.D. 832, which is a further reason that the Cable Companies have failed to establish that any injury is fairly traceable to the Towns.

In short, there is no allegation of *any* conduct by the Towns that has caused or contributed to the alleged injuries of the Cable Companies, and thus the Cable Companies have failed to satisfy their burden to demonstrate an injury that is fairly traceable to the Towns. At most, the Cable Companies' claims against the Towns rest on their assertion that 30-A M.R.S. § 3008 confers on Towns the right to seek injunctive relief in addition to other remedies, and the

Towns therefore *may* seek to enforce L.D. 832 at some indefinite point in the future. If this were enough to support standing, then a person could be hailed into federal court any time a statute was enacted that conferred a theoretical right of action on that person, which is contrary to established jurisdictional precedent and just public policy. For all of these reasons, the Court should find that any injury suffered by the Cable Companies is not fairly traceable to the Towns.

**III.   The Cable Companies' Claims Against the Towns Are Not Ripe**

A party invoking federal jurisdiction bears the burden of establishing both ripeness and standing. *See Rhode Island Ass'n of Realtors v. Whitehouse*, 199 F.3d 26, 33 (1st Cir. 1999) (ripeness); *Lujan*, 504 U.S. at 561 (standing). The ripeness doctrine "seeks to prevent the adjudication of claims relating to contingent future events that may not occur as anticipated, or indeed may not occur at all." *Reddy*, 845 F.3d at 500. The rationale is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). "Standing and ripeness have a 'close affinity' and may even 'overlap' with each other." *Portland Pipe Line Corp. v. City of S. Portland*, 164 F. Supp. 3d 157, 171 (D. Me. 2016). "The overlap is most apparent in cases that deny standing because an anticipated injury is too remote." *McInnis-Misenor v. Maine Med. Ctr.*, 319 F.3d 63, 69 (1st Cir. 2003) (citing 13A C.A. Wright, A.R. Miller & E.H. Cooper, *Federal Practice and Procedure* § 3531.12, at 51 (2d ed. 1984)).

To determine whether a case is ripe for review, courts evaluate both "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Portland Pipe Line Corp.*, 164 F. Supp. 3d at 171 (quotation marks omitted). Fitness and hardship "are related but distinct." *Id.* at 174 (quotation marks omitted). Under the first prong of this test, a matter is not ripe for judicial review where "it rests upon 'contingent future events that

may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted); *see also City of Fall River, Mass. v. F.E.R.C.*, 506 F.3d 1, 6 (1st Cir. 2007) (stating that a matter is not ripe where it "involves uncertain events which may not happen at all" (quotation marks omitted)). Under the second prong, "[i]f the court's interest tends toward postponement, [the court] must then weigh this consideration against the immediate impact of the actions on the challengers, and whether that impact is so harmful that present consideration is warranted." *Id.* at 6 (quotations marks omitted).

Here, for the same reasons that the Cable Companies lack standing vis-à-vis the Towns, the Cable Companies' claims are not ripe as against the Towns. The Cable Companies' claims against the Towns rest entirely on contingent future events that may not occur as anticipated or may not occur at all—specifically, the theoretical possibility that the Towns may seek to enforce L.D. 832 at some time in the future. *Cf.* Compl. ¶ 67. As noted above, the Cable Companies' assertion that municipalities have the theoretical authority to enforce L.D. 832, without a specific, imminent allegation of harm, is insufficient to give rise to a justiciable case or controversy.

Furthermore, there would be no hardship to the Cable Companies should the Court withhold consideration as to the Towns at this time. If the Towns are dismissed and subsequently seek enforcement of L.D. 832, the ripeness question may be reevaluated at that time, in the context of a developed factual record. Moreover, as noted above, a decision by the Court with respect to Governor Mills or Attorney General Frey would fully resolve the Cable Companies' claims. In short, there will be no hardship to the Cable Companies if the Towns are

dismissed from this Lawsuit. Accordingly, the Court should find that the Cable Companies' claims against the Towns are not ripe.

### IV. The Towns Are Not Necessary Parties To This Dispute

Finally, it should be noted that the Towns and other municipalities named as defendants are not necessary to a full and complete adjudication of this matter. Federal Rule of Civil Procedure 19(a) sets forth the circumstances under which a party is "necessary" to a dispute: "A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if . . . in that person's absence, the court cannot accord complete relief among existing parties" or if "that person claims an interest relating to the subject of the action" and if resolving the claim in the party's absence would "impair or impede the person's ability to protect the interest" or expose an existing party to substantial risk of multiple or inconsistent obligations. Fed. R. Civ. P. 19(a).

The Court can afford complete declaratory and injunctive relief, if appropriate, without the Towns as parties to this matter. A declaration that L.D. 832 is preempted or unconstitutional will render the statute null and void. The Court can grant such relief without requiring that the Towns remain parties to this suit. *See Bacardi Int'l Ltd. v. V. Suarez & Co.*, 719 F.3d 1, 10 (1st Cir. 2013) (concluding that so long as a party's absence does not prevent the district court from affording complete relief, Rule 19(a) does not mandate that party's continuing presence). Furthermore, as discussed above, any claims against the Towns will not ripen until the Towns have taken some action to enforce L.D. 832. Therefore, the Towns are not necessary parties in this case.

## CONCLUSION

For all the foregoing reasons, the Court should dismiss the Cable Companies claims against the defendant Towns pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).


Dated:  October 7, 2019    /s/ Eben M. Albert
Eben M. Albert
Philip R. Saucier
BERNSTEIN SHUR
100 Middle Street
PO Box 9729
Portland, ME  04104-5029
207-774-1200
ealbert@bernsteinshur.com


Attorneys for Defendants
The Town of Berwick, Maine
The Town of Bowdoinham, Maine
The Town of Eliot, Maine
The Town of Freeport, Maine
The Town of South Berwick, Maine
The Town of Topsham, Maine